# UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**MERRILL BURROUS CHAMBERLAIN,**

Petitioner,

v.

**CIVIL NO. 95-167 LH/DJS**

**JOHN SHANKS, Warden,**

Respondent.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

1. THIS MATTER is a proceeding on a petition for a writ of *habeas corpus* pursuant to 28 U.S.C. §2254. Petitioner is represented by counsel and seeks to vacate the judgment and sentence entered in CR 42840 in the Second Judicial District, Bernalillo County, of New Mexico. In that proceeding, Petitioner was convicted upon jury verdicts of assault, battery, aggravated assault with intent to commit a violent felony upon a peace officer, and first degree murder. Petitioner was sentenced to a term of imprisonment of life plus one year.

2. Petitioner challenges his conviction and sentence on six grounds. First, he asserts that he was afforded ineffective assistance of counsel. Second, Petitioner asserts that he was denied due process because the prosecutors in his case suppressed exculpatory evidence and because they

---

[1] Within ten (10) days after a party is served with a copy of these proposed findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommendations. A party must file any objections within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommendations. If no objections are filed, no appellate review will be allowed.

engaged in improper argument. Third, Petitioner claims that he was denied due process by improper jury instructions. Petitioner's fourth claim for relief is that he was denied due process by the jury's improper experimentation with exhibits. Fifth, Petitioner asserts that his right to due process was violated by the trial court's limitation of *voir dire* regarding pre-trial publicity and by that court's failure to preserve records of pre-trial proceedings. Sixth, Petitioner asserts that the cumulative effect of his claimed errors constitutes a violation of his right to due process. The Court has ordered and received the Record Proper of the state court proceedings. In addition, the parties have briefed the merits of the issues.

      3. As a preliminary matter, 28 U.S.C. § 2254 (b) and (c) require that a state prisoner seeking relief must exhaust state remedies before seeking to obtain relief in a federal *habeas* proceeding. See generally Rose v. Lundy, 455 U.S. 509 (1982). Respondent concedes and this Court finds that Petitioner has exhausted his state court remedies as to the claims brought in the instant petition.

### FACTUAL BACKGROUND

      4. The facts leading to Petitioner's conviction were set forth by the New Mexico Supreme Court in its review of Petitioner's direct appeal in State v. Chamberlain, 819 P.2d 673 (N.M. 1991) and by the Tenth Circuit Court of Appeals in the review of the dismissal of a civil suit brought by Petitioner which was styled as Chamberlain v. City of Albuquerque, 991 F.2d 805, 1993 WL 96883 (10th Cir., March 29, 1993) (unpublished disposition). As discussed by those courts, on February 21, 1987, the Albuquerque Police Department received a call from Petitioner's home from a woman who claimed that Petitioner was physically assaulting her. The woman turned out to be a prostitute whom Petitioner had hired. Albuquerque police officers Messimer and Carrillo arrived at Petitioner's house after receiving confirmation that the emergency call did originate from that address. The

officers obtained Petitioner's consent to search the house, but did not find the woman who had called, all though they did find evidence that a woman had been in a bedroom. The officers requested permission to search again. However, Petitioner declined to consent to a further search and requested his lawyer. The officers permitted him to go upstairs to call his lawyer but accompanied him to that floor of the house. The officers continued to search. Meanwhile, Petitioner retrieved a briefcase with a pistol in it and carried it into the bathroom. The officers allowed Petitioner to enter the bathroom unescorted. When he left the bathroom, Officer Carrillo blocked his exit. Petitioner asserts that Carrillo held a gun leveled at his chest. Petitioner returned to the bathroom, removed his pistol from the briefcase, and engaged in a gun battle with the officers, killing Officer Carrillo before surrendering to Officer Messimer.

**STANDARD OF REVIEW**

5. This case was filed before passage of the Antiterrorism and Effective Death Penalty Act of 1996. Consequently, this Court should not apply the standards set by that statute to this action. Lindh v. Murphy, 521 U.S. 320 (1997). In conducting *habeas* review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. Estelle v. McGuire, 502 U.S. 62, 67 (1991). Federal *habeas* relief does not lie for errors of state law. Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Therefore, while a federal court will review for the constitutional protection of due process, it will not exercise supervisory authority over the state courts. See Nichols v. Sullivan, 867 F.2d 1250, 1253 (10th Cir.), cert. den., 490 U.S. 1112 (1989).

6. Under the previous version of 28 U.S.C. §2254(d), explicit and implicit findings of historical fact by the state trial and appellate courts are presumed correct. Case v. Mondragon, 887 F.2d 1388, 1392-93 (10th Cir. 1989), cert. denied, 494 U.S. 1035 (1990). This presumption of

3

correctness does not obtain if one of the eight factors enumerated in the old version §2254(d) applies or the Court concludes that the findings are not supported by the record.[2] This Court finds that none of the factors enumerated in the former 28 U.S.C. §2254(d) apply and that the state court findings are supported by the record below.

## INEFFECTIVE ASSISTANCE OF COUNSEL

7. Petitioner's first claim for relief is that his trial counsel was ineffective. Petitioner asserts that his trial counsel was ineffective because he: 1) failed to attend a deposition of Petitioner which was taken in a related civil case; 2) failed to move effectively for change of venue; 3) failed to excercise three peremptory challenges to remove biased jurors; 4) failed to cross-examine

---

[2]The factors set forth in the former 28 U.S.C. §2254(d) are:

(1) that the merits of the factual dispute were not resolved in the State court hearing;

(2) that the fact finding procedure employed by the State court was not adequate to afford a full and fair hearing;

(3) that the material facts were not adequately developed at the State court hearing;

(4) that the State court lacked jurisdiction of the subject matter or over the person of the applicant in the State Court proceeding;

(5) that the applicant was an indigent and the State court, in deprivation of his constitutional right, failed to appoint counsel to represent him in the State court proceeding;

(6) that the applicant did not receive a full, fair, and adequate hearing in the State court proceeding;

(7) that the applicant was otherwise denied due process of law in the State court proceeding;

(8) or unless that part of the record of the State court proceeding in which the determination of such factual issue was made, pertinent to a determination of the sufficiency of the evidence to support such factual determination, is produces as provided for hereinafter, and the Federal court on a consideration of such part of the record as a whole concludes that such factual determination is not fairly supported by the record.

4

prosecution witnesses to establish that the police officers drew their weapons prior to the first shot and failed to obtain audio forensics and ballistics experts to authenticate the tape of the proceedings and establish facts helpful to the defense; 5) requested erroneous jury instructions and failed to object to an erroneous self-defense instruction. Plaintiff raised his ineffective assistance of counsel claims in his direct appeal, where those claims were considered and rejected by the New Mexico Supreme Court. Chamberlain, 819 P.2d at 683.

    8.  To succeed in an ineffective assistance of counsel claim, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Judicial scrutiny of counsel's performance is highly deferential and indulges a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Rogers v. United States, 91 F.3d 1388, 1392 (10th Cir. 1996); Miles v. Dorsey, 61 F.3d 1459, 1478 (10th Cir. 1995) (citations omitted). Under the prejudice aspect of Strickland, a federal court inquires whether there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Rogers, 91 F.3d at 1392. Petitioner must establish that counsel's deficient performance rendered his trial fundamentally unfair or unreliable. Id..

    9. Petitioner is not entitled to relief on his claim that his counsel was constitutionally ineffective for failing to attend his deposition in a related civil case. Petitioner filed a *pro se* complaint pursuant to 42 U.S.C. §1983 against the City of Albuquerque, its police department and various police officers, including the decedent, Carrillo, contending that his Fourth, Fifth, and Sixth Amendment rights were violated during the incident wherein he killed Carrillo. Chamberlain, 1993 WL 96883 at 1. Prior to the trial leading to his conviction for first degree murder, attorneys

5

representing the City and the officers took Plaintiff's deposition in the civil case. Petitioner's testimony was used to impeach him at trail. He contends that his trial counsel for his criminal case should have attended the deposition. Petitioner claims that his deposition testimony required him to follow the unsuccessful trial strategy of taking the stand and asserting self-defense in his murder trial. A previous trial in which Petitioner had not testified had resulted in a hung jury and a mistrial on the capital charge. Petitioner essentially argues that the lack of success of his self-defense claim demonstrated that his counsel for the second trial utilized an unreasonable strategy.

10. Petitioner's claim regarding his self-defense presentation during the second trial, like many of Petitioner's claims regarding ineffective assistance of counsel, is an attack upon his counsel's trial strategy. The Court notes that deference should be given to counsel's tactical judgments. Osborne v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988); See, United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance of counsel.") Moreover, there is a strong presumption that counsel's actions constitute reasonable professional assistance of counsel. Strickland, 466 U.S. at 689. "For counsel's [decision] to rise to the level of constitutional ineffectiveness, the decision ... must have been 'completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.' " Hatch v. Oklahoma, 58 F.3d 1447, 1459 (10th Cir.1995) (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 4 (1st Cir.1983)), cert. denied, 517 U.S. 1235 (1996)). The reasonableness of counsel's challenged conduct must be assessed at the time of the conduct. Dever v. Kansas State Penitentiary, 36 F.3d 1531, 1537 (10th Cir.1994). Neither hindsight nor success is the measure. Id.

11. Plaintiff's claim that his trial counsel was ineffective for failing to attend his deposition

6

in the civil suit he brought does not state a claim for ineffective assistance of counsel. A criminal

defendant, not counsel, makes the decision whether or not to testify. See United States v. Janoe, 720

F.2d 1156, 1161 & n. 10 (10th Cir.1983). Similarly, Plaintiff chose to bring his §1983 action prior

to his second criminal trial and chose to represent himself in that proceeding. Those decisions, made

by Petitioner, do not lead to the conclusion that his criminal trial counsel was ineffective.

     12. Similarly, Petitioner's claim that his trial counsel was ineffective because he failed to

effectively move for a change of venue cannot afford Petitioner any *habeas* relief. In Brecheen v.

Reynolds, 31 F.3d 1343, 1350 (10th Cir.) cert. denied 515 U.S. 1135 (1995), the Tenth Circuit Court

of Appeals noted that, on *habeas* review, a federal court faced with a claim of denial of due process

due to a jury tainted by pre-trial publicity is "limited to enforcing the commands of the United States

Constitution." (Quoting Mu'Min v. Virginia, 500 U.S. 415, 422 (1991)). A federal habeas court may

reverse a state trial court's findings only upon a showing of " 'manifest error.' " Id. (citing Patton v.

Yount, 467 U.S. 1025, 1031(1984);  Church v. Sullivan, 942 F.2d 1501, 1518 (10th Cir.1991)).

"Part of the rationale behind the limited nature of federal review of a state trial court's findings is that

'[t]he state trial judge had the benefit of observing the general demeanor of the jurors as the basis

for his general finding.'" Id., (quoting Church, 942 F.2d at 1519; see also Patton, 467 U.S. at 1038,

(trial court's resolution of demeanor is entitled to "special deference")). Therefore, a *habeas*

petitioner seeking to establish this type of due process violation must demonstrate either that the trial

resulted in actual prejudice or that it gave rise to a presumption of prejudice because it involved

"such a probability that prejudice will result that it is deemed inherently lacking in due process."

Estes v. Texas, 381 U.S. 532, 542-43 (1965).

     13. Petitioner's trial counsel renewed the request, made before Petitioner's first trial, that the

state court change the venue of the trial. Counsel at Petitioner's first trial filed a motion seeking a change of venue and the motion was denied. The trial court also denied the oral request that venue be changed before the second trial. Assuming, *arguendo* that counsel's failure to file a successive written motion to change venue constitutes ineffective assistance of counsel, Petitioner would have to show that his trial was rendered fundamentally unfair by pre-trial publicity in order to demonstrate prejudice from counsel's ineffective performance. Petitioner has not made an adequate showing. While he states that most of the venire panel had heard some media accounts of the events leading to his trial, "[t]o hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard." Irvin v. Dowd, 366 U.S. 717, 723 (1961). Petitioner has made no showing that the jurors' ability to judge his case impartially was affected. Because he cannot show that he was prejudiced, Petitioner is not entitled to relief on this ineffective assistance of counsel claim.

14. Petitioner next argues that his trial counsel was ineffective for failing to exercise three peremptory challenges to remove three jurors from the panel who had ties to law enforcement. Petitioner contends that leaving the jurors, one of whom served as an alternate, on the panel cannot be considered a reasonable trial strategy. Once again, in order to show prejudice from the alleged failure by counsel, Petitioner must show that the seated jurors were biased against him. Petitioner states that one of the jurors, Gregory Lee had been an Albuquerque police officer for five years. He asserts that another juror, Brian Patrick, had worked as a security guard and had a brother on the Albuquerque police force. Petitioner states that the third individual his counsel should have challenged was Melvin Sanchez, who was seated as an alternate. However, Petitioner does not claim

that Sanchez participated in his jury's deliberations. Consequently, he could not have been prejudiced by any possible bias on Sanchez' part.

15. While Petitioner asserts that jurors Lee and Patrick were biased against him, he points to no evidence in favor of that assertion other than their responses in *voir dire* that indicated experience with law enforcement or the Albuquerque police department. As such, his claim is analogous to one of implied bias. See Gonzales v. Thomas, 99 F.3d 978, 987 (1996). The concept of implied bias arises in situations where a juror is an actual employee of the prosecuting agency, is a close relative to one of the participants in the trial or the criminal transaction, was a witness or involved in the criminal transaction, or on the basis of similarities between the juror's experiences and the facts that gave rise to the trial. Id. (Citations omitted). In order to show implied bias, the similarities between the seated juror and the incident giving rise to the trial must be sufficient to create a substantial emotional involvement which adversely affected the juror's impartiality. Id. In this instance, Petitioner raises no more than an inference of bias based on the fact that one juror had police experience with the Albuquerque force and that another juror's brother served with the Albuquerque Police. In an implied bias review to determine whether a violation of the right to an impartial jury, such an allegation would be insufficient to merit *habeas* relief. Cf. Gonzales, 99 F.3d at 989-990 (Declining to hold that a rape victim could never be an impartial juror in a rape trial). Similarly, Petitioner's allegations are insufficient to show that he was actually prejudiced by counsel's decision not to excuse jurors Lee and Patrick, whether or not that decision fell below the prevailing professional norms.

16. Petitioner contends that his trial counsel was ineffective because counsel failed to cross examine witnesses and to obtain expert witnesses to establish that Officer Carrillo drew his weapon

before the first shot was fired. This claim rests, in part, upon Petitioner's allegation that the audiotape of the incident taken from Carrillo's belt recorder was altered. Petitioner contends that the proper expert witness could have made the alleged alteration known to the jury. In addition, Petitioner argues that his counsel was ineffective for failing to obtain a ballistics expert who would testify, based upon bullet trajectories, that Officer Carrillo was kneeling when Petitioner shot him. He further contends that counsel should have established, through cross-examination of prosecution witnesses, that Officer Carrillo was trained to kneel in a defensive firing position, which would have been consistent with the officer having drawn his gun. Petitioner posits that such testimony would have corroborated his version of events and aided in his self-defense argument.

17. "[T]he decision of what witnesses to call is a tactical one within the trial counsel's discretion." Minner v. Kerby, 30 F.3d 1311, 1317 (10th Cir.1994). Plaintiff's conclusion that trial counsel's decision not to call a ballistics expert in an attempt to determine Officer Carrillo's stance at the moment he was shot or an audio forensics expert to analyze Carrillo's belt tape had an affect on the outcome of trial is unsupported and unlikely. Petitioner testified that Carrillo was kneeling and pointing a gun in his direction when he exited the bathroom. Officer Messimer was not in a position to observe the shooting and did not controvert that testimony. While a ballistics expert might have been able to testify that Carrillo's chest wound and the bullet path into the wall were consistent with the officer kneeling, such evidence would only serve to reinforce Petitioner's uncontroverted testimony on that point, which the jury disregarded. In addition, that testimony would have been of minimal assistance to Petitioner's self-defense claim, as he had already taken the gun from the bedroom into the bathroom while it was concealed in a briefcase. At that point, neither of the officers had drawn their guns.

10

18. Petitioner had an audio forensics expert review the audiotape in the course of the instant *habeas* proceedings. That expert's report, which was attached as Exhibit A to Petitioner's Memorandum Brief in Support of Motion for Evidentiary Hearing filed November 17, 1997 (Docket No. 62), notes only one suspicious record event, a "stop signature" on the tape shortly before the portion where the first gunshot occurs. The expert concluded that the event could not be satisfactorily explained, as no "start of over-record" or other erase head mark could be located on the portion of the tape recording the shooting incident. Petitioner's expert concluded that an earlier stopping of the recorder not associated with Carrillo's killing could have caused the "stop signature". This conclusion does not support Petitioner's contention that the tape from Carrillo's belt recorder was altered and, further, would not have had an affect on the course of the trial. Consequently, Petitioner cannot show prejudice from trial counsel's failure to obtain and present testimony from an audio forensics expert witness.

19. Petitioner's final claim regarding his asserted ineffective assistance of counsel is that his counsel submitted erroneous jury instructions and failed to request a self defense instruction which specified that it was the state's burden to disprove self defense. In addition, Petitioner asserts that his trial counsel failed to object to an erroneous self defense instruction. It is settled law that "[i]n a *habeas* proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden." Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.) cert. denied, ___U.S.___, 115 S.Ct. 1972 (1995) (citing Lujan v. Tansy, 2 F.3d 1031, 1035 (10th Cir. 1993) cert. denied, 510 U.S. 1120 (1994)). A federal *habeas* court may only set aside a state conviction on the ground of an erroneous jury instruction "when the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial." Maes, 46 F.3d at 984; see also Cupp v.

Naughten, 414 U.S. 141, 146 (1973). The Supreme Court has explained that "[t]he burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

20. The jury instructions given at Petitioner's trial did not render that proceeding fundamentally unfair. Consequently counsel's performance with respect to the jury instructions does not fall to the level of ineffectiveness such that his representation was the same as no counsel at all. Further, Petitioner is not entitled to relief on his third ground asserted, which is that he was denied due process by the giving of erroneous jury instructions. Petitioner complains that the instruction given required the jury to consider evidence that he killed officer Carrillo while defending himself, rather than an instruction requiring the jury to consider whether he acted in self defense. The New Mexico Supreme Court concluded that Petitioner did not have the right to resort to self-help to eject the police officers once he terminated his consent to their presence. Chamberlain, 819 P.2d. at 679. It is uncontroverted that Petitioner fired the shot that killed officer Carrillo. Given the ruling of the New Mexico Supreme Court that the question of the lawfulness of the officers' presence in Petitioner's was irrelevant, the jury should not have considered whether he was acting in self defense when he armed himself by taking his pistol into the bathroom out of the sight of the officers. The question the jury properly considered was whether Petitioner came to the door of the bathroom, saw officer Carrillo pointing a weapon at him and then acted in self defense when he retreated further into the bathroom, retrieved his pistol and then returned to the bathroom door and killed the officer. The instruction given at trial did not prevent the jury from properly considering the evidence and applying the appropriate analysis.

12

### DUE PROCESS- PROSECUTORIAL MISCONDUCT

21. Petitioner's first claim regarding prosecutorial misconduct is that prosecutors suppressed the fact that the audiotape of the incident from Officer Carrillo's belt tape had been altered. In <u>Brady v. Maryland</u>, 373 U.S. 83, 87 (1963), the Supreme Court held that the prosecution's suppression of evidence violates due process where the evidence is material to either guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. In <u>Giglio v. United States</u>, 405 U.S. 150 (1972), the Court held that the due process protection announced in <u>Brady</u> includes evidence that undermines the credibility of the prosecution's witnesses. In order to show a <u>Brady</u> violation, Petitioner must establish that the prosecution suppressed evidence, the evidence was favorable to the accused, and that the evidence was material. <u>Hatch v. Oklahoma</u>, 58 F.3d 1447, 1469 (10th Cir. 1995) <u>cert. denied</u>, 116 S.Ct. 1881 (1996). As discussed in paragraph 18, *supra*, review of the tape by an audio forensics expert did not lead to a finding that the tape had been altered. Consequently, Petitioner cannot show that the prosecutors suppressed any evidence and is not entitled to relief on that claim.

22. Petitioner's second allegation regarding prosecutorial misconduct is that the prosecutor improperly argued facts outside the record and injected personal opinion into his closing argument. The prosecutor argued that the jury should consider that sounds on the audiotape from Officer Carrillo's belt recorder revealed that the policeman drew his gun just before the first shot was fired. Although analysis of the tape could not prove that the officer drew his pistol just before he was killed, that analysis did not rule out that the sounds in question were created by the officer's pistol being drawn from its holster. The prosecutor properly argued one interpretation of the evidence.

23. A prosecutor's improper comment or argument will require reversal of a state conviction

13

only where the remarks sufficiently infect the trial so as to make it fundamentally unfair and, therefore, a denial of due process. See Donnelly v. DeChristoforo, 416 U.S. 637, 643, 645 (1974); see also Darden v. Wainwright, 477 U.S. 168, 181 (1986). Inquiry into the fundamental fairness of a trial can be made only after examining the entire proceedings. See Donnelly, 416 U.S. at 643. Petitioner points to one portion of the prosecutor's closing argument as being improper because it interjected his personal opinion. In that portion of the argument, the prosecutor stated in part:

> Let's (sic) me just tell you the truth of what happened that night is on that tape. You have a tape recording of the entire incident, and only one person, one witness' story fits that tape, and that's John Messimer's. You listen to that tape and you can hear and see the Defendant's dark and sinister side.... There is a cold, calculating side to this man that will to anything to survive, whether it be killing a cop or lying to a jury.

24.   The Tenth Circuit Court of Appeals has characterized as "unnecessary" and "unwarranted" a prosecutor's closing argument in which he called the defendant a "liar" and told the jury that defendant had not told the complete truth. See United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir.1994). However, referring to testimony as a lie does not constitute *per se* prosecutorial misconduct. See id.; United States v. Robinson, 978 F.2d 1554, 1567 (10th Cir.1992) (noting that although " 'a prosecutor would be well advised to avoid directly accusing defendant of lying[,] ... we are confident that the statements in this case would have been perceived only as commentary on the implausibility of the defendant's story' " (quoting United States v. Garcia, 818 F.2d 136, 143-44 (1st Cir.1987)). In this instance, the prosecutor's remarks did not render Petitioner's trial fundamentally unfair. Despite his referral to telling the jury "the truth of what happened", that comment was couched in terms of the truth being apparent from the evidence. The prosecutor exhorted the jury to consider a particular piece of evidence, the audiotape, and analyze the witnesses' testimony in light

14

of that evidence. Further, his comments, like those in <u>Robinson</u>, *supra*, can only be viewed as commentary on the implausibility of Petitioner's story.

### DUE PROCESS- JURY EXPERIMENTATION

25. Petitioner asserts that he was denied due process because one of the jurors placed Officer Carrillo's gun belt and holster on his waist and drew the pistol from the belt in an attempt to reproduce the sound from the videotape which the prosecutor argued was created by just that event. Petitioner argues that the jury engaged in improper experimentation based upon facts not in evidence. However, Petitioner is not entitled to relief on this ground. The belt, holster, weapon, and audiotape were all introduced into evidence and provided to the jury for use in their deliberations. The jury had the duty to consider all of the evidence and drawing the pistol from the holster in an attempt to determine whether the sound it created showed up on the videotape was not improper.

26. In addition, Petitioner asserts that he was denied due process and subjected to the functional equivalent of double jeopardy because the jury acquitted him of first degree murder during its deliberations, then considered lesser offenses before improperly returning to the first degree murder charge and returning a verdict for that crime. Petitioner contends that the jury could not reconsider the greater charge once they had failed to agree on a guilty verdict. He argues that a note from the jury indicates that he had been acquitted of first degree murder. Respondent argues that under New Mexico law, a verdict must be signed by the foreman and returned in open court. Respondent also notes that the New Mexico Supreme Court considered and rejected Petitioner's claim on direct appeal.

28. The Court agrees that this claim cannot afford Petitioner *habeas* relief. Petitioner speculates that a note from the jury asking whether they could return to a higher count after

proceeding to a lower count meant that the jury had acquitted him of first degree murder. An equally plausible explanation of the note is that the jury wanted to make certain that they could not resume consideration of a higher count and sought clarification from the judge before moving on to consider lesser counts and, potentially, precluding themselves from further deliberation of the first-degree murder charge. A federal *habeas* proceeding pursuant to 28 U.S.C. §2254 is a civil proceeding in which the burden is on the petitioner to prove by a preponderance of evidence that he is entitled to relief. Miles v. Dorsey, 61 F.3d 1459, 1472 (10th Cir. 1995) cert. denied, 116 S.Ct. 743 (1996); Godbold v. Wilson, 518 F.Supp. 1265, 1269 (D.Co. 1981) (citations omitted). Further, absent evidence to the contrary, federal courts presume that jurors remain true to their oath and conscientiously observe the instructions and admonitions of the court. United States v. Easter, 981 F.2d 1549, 1553 (10th Cir.1992). Petitioner cannot satisfy his burden with unsupported speculation and is not entitled to relief on this ground.

### DUE PROCESS- LIMITATION OF VOIR DIRE

27. Petitioner contends that he was denied due process because the trial court limited *voir dire* regarding media exposure and because the trial court failed to preserve records from pre-trial hearings. With regard to the second assertion, Petitioner states that the prosecution violated an agreement which it entered into at one of the hearings not to refer to his incarceration or to his conviction in his first trial. He also contends that he was denied to be present at a hearing held October 5, 1989. Absent an allegation and demonstration of greater prejudice, Petitioner cannot show that his trial was rendered fundamentally unfair. Consequently, he was not denied due process by the loss of those records.

27. The trial court's limitation of *voir dire* regarding the jury panel's media exposure did not

result in a denial of due process, either. This court's review of the state trial court's *voir dire* is "limited to enforcing the commands of the United States Constitution." Mu'Min v. Virginia, 500 U.S. 415, 422 (1991). In conducting this review, federal courts are deferential to the trial court's determination of what questions should be asked. See Id. at 424. "To be constitutionally compelled, ... it is not enough that such questions might be helpful. Rather, the trial court's failure to ask [tendered] questions must render the defendant's trial fundamentally unfair." Id. at 425-26. In this case, the trial court did not limit *voir dire* questions regarding pre-trial publicity to the point that Petitioner was denied a fair trial. First, potential jurors' knowledge of the case was a subject on the jury questionnaires. Record Proper, Transcript of Proceedings for 10/16/89, Vol. I-A, p. 4. Secondly, Petitioner mis-characterizes the extent to which jurors were questioned regarding pre-trial publicity. Both the trial judge and the prosecutor asked jurors if they knew anything about the case. In addition, the prosecutor asked each potential juror whether they would believe the evidence heard in court over what they had heard in a previous news account. See e.g. Record Proper, Transcript of Proceedings for 10/16/89, Vol. I-A, p. 11, 16, 22, 29, 35, 39-40, 48, 55-56, 59, 62, 67-8, 72, 77-78, 85, 90, 97, 102, 104, 115, 120-122, 127-128, 139-140, 145. Although most of the venire panel indicated that they had read or heard something about the case, few had any detailed memory of the news reports. Id. Based upon a review of the record proper, the trial court did not unduly limit *voir dire* and deprive Petitioner of due process.

### CUMULATIVE ERROR

28. Petitioner asserts that the cumulative effects of the errors committed by counsel and the trial court combined to render his trial fundamentally unfair and deny him due process. However, his trial counsel did not render ineffective assistance and Petitioner has not shown that he was

17

prejudiced by counsel's performance. Further, the state trial court did not deny Petitioner due process in any way. Consequently, cumulative error did not result in a denial of due process.

**MOTION TO AMEND**

29.   On July 28, 2000, Petitioner submitted a *pro se* "Motion and Memorandum of Supporting Law for Appointment of Substitute Counsel to Amend Petitioner's Pleadings" (Docket No. 94). In that motion, Petitioner requests that the Court appoint him counsel not employed by the Federal Public Defender and that he be permitted to raise additional matters in his memorandum brief. Petitioner contends that the attorney appointed him from Federal Public Defenders office failed to raise certain issues in his memorandum brief. Assuming, *arguendo*, that Petitioner's averment is true, no harm is done his cause because the issues he seeks to raise are without merit.

30. Petitioner contests the accounts of the prosecution witnesses of the events leading to Officer Carrillo's shooting and death and of the evidence. However, he gave his account of the events at trial and the jury chose to credit other witnesses. Petitioner contends that his memorandum brief should have included information from the analysis of Officer Carrillo's belt tape conducted by the Federal Bureau of Investigation. He asserts that the FBI analysis revealed various anomalies, which he characterizes as evidence that the tape was altered. However, no review of the tape, apart from Petitioner's has come to that conclusion. The anomalies noted on the recording have not been attributed to erasure or alteration of the tape.

31. The Sixth Amendment right to counsel does not apply to civil proceedings such as a *habeas* petition in which a prisoner is collaterally attacking his conviction. Coleman v. Thompson, 501 U.S. 722, 752 (1991); see also Pennsylvania v. Finley, 481 U.S. 551, 555 (1987) (no constitutional right to counsel in collateral attack on conviction); Williams v. Lockhart, 849 F.2d

1134, 1139 (8th Cir.1988) (*habeas* relief not available based on ineffective assistance of attorney appointed for state court collateral post-conviction proceedings because no constitutional right to counsel attaches to such proceedings). "In the absence of a constitutional violation, the petitioner bears the risk in federal *habeas* for all attorney errors made in the course of the representation...." Coleman, 501 U.S. 753. Further, Petitioner is not entitled to the counsel of his choice. See United States v. Nichols, 841 F.2d 1485, 1504 (10th Cir. 1988). More importantly, Petitioner's counsel has vigorously argued all possible avenues of federal *habeas* relief. Consequently, Petitioner's motion for appointment of new counsel and to amend his petition should be denied.

**RECOMMENDED DISPOSITION**

That Petitioner's Motion and Memorandum of Supporting Law for Appointment of Substitute Counsel to Amend Petitioner's Pleadings (Docket No. 94) be denied and that this petition be denied and the matter dismissed with prejudice.

DON J. SVET
**UNITED STATES MAGISTRATE JUDGE**

19